**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

WILLIAM CATO SELLS, JR.,

     *Petitioner*,

vs.

NEVADA STATE BOARD OF PAROLE, *et al.*,

     *Respondents*.

3:14-cv-00361-LRH-VPC

ORDER

This habeas matter under 28 U.S.C. § 2254 comes before the Court for a decision on the merits. In the sole ground presented, petitioner alleges that his exposure to a parole revocation hearing in Nevada constituted exposure to a second parole violation proceeding based on the same underlying parole violations in violation of the Double Jeopardy Clause.

***Background***

Petitioner William Cato Sells, Jr., was convicted in 1994 in Nevada of multiple offenses and sentenced as a habitual criminal to, *inter alia*, two concurrent sentences of life with the possibility of parole. He thereafter was paroled on July 7, 2009, to supervision by the State of Washington pursuant to an interstate compact.

Petitioner alleges in the federal petition that he was arrested by Washington authorities on July 18, 2010, for, *inter alia*, second degree identity theft and second degree possession of stolen property.[1]

///

---

[1]ECF No. 5, at 1.

1       On or about July 29, 2010, Washington authorities sent a violation report to Nevada authorities.

2  Nevada authorities responded that same date on a form designated as a "Response to Violation Report."

3       The following responses on the form were marked by an "x" in a box:

4       x  This acknowledges receipt of your violation report dated: 07/29/2010

5       x  Continue supervision and notify upon disposition of pending charges.

6       x  Continue supervision and apply any appropriate sanctions.

7       x  Other (explain*)

8      *Explanation: Nevada is in the process of submitting a Violation Report
9  to the Parole Board and requesting Mr. Sells' parole be rescinded.
Please keep your case active until such a time as the Division is in
10 receipt of the Parole Board's Order (NV) and warrant. Please continue
to advise on the status of his new charges. Please feel free to contact me
11 directly at . . . with questions or information. Thank you.

12 See ECF No. 5, at 14.

13       Twelve days later, on August 10, 2010, a proceeding was held at the Grays Harbor County Jail

14 in Washington. The hearing officer found Sells guilty on allegations based on identity theft, possession

15 of stolen property, possession of burglary tools, and burglary. The hearing officer dismissed a

16 marijuana use allegation "as there was no condition to not use drugs." The hearing officer

17 recommended the following:

18      . . . . Recommend a warrant be issued by Nevada for the return
of Mr. Sells for a parole revocation hearing. I recommend that he be
19 held in confinement pending a decision by Nevada. If Mr. Sells is not
returned I recommend a 90 day sanction.

20

21 ECF No. 5, at 16-17.

22       Less than 60 days later, on September 30, 2010, Nevada authorities issued a retake warrant

23 seeking to have Sells returned to Nevada for violating his parole conditions.[2]

24       Sells apparently was convicted and incarcerated in Washington thereafter on the underlying

25 criminal offenses that occurred in Washington.

26 ///

27

28     [2]ECF No. 5, at 19.

-2-

On August 13, 2012, while incarcerated in Washington State Prison in Walla Walla, Sells filed a petition for a writ of prohibition in Nevada state district court.   He alleged that the August 10, 2010, proceeding had constituted a "parole violation proceeding" and that double jeopardy barred Nevada authorities from conducting a second proceeding.  ECF No. 7-3.

The state district court denied relief on, *inter alia*, the following basis:

> First, double jeopardy does not apply to parole revocation proceedings. *Moor v. Palmer*, 603 F.3d 568, 660 (9th Cir. 2010), *quoting Hudson v. United States*, 522 U.S. 93, 98-99 (1997); *Dunn v. California Dep't of Corrections*, 401 F.2d 340, 342 (9th Cir. 1968).

> Second, Sells fails to demonstrate that any action taken by the WDOC violated double jeopardy. [Nevada] Parole and Probation's pending administrative hearing to revoke Sells' parole is based solely upon Sells' two life sentences, the grant of parole in 2009, and his illegal actions which lead to the new Washington conviction.  No action taken by WDOC regarding disciplinary action has any impact on Sells' continuation of his Nevada life sentences.
> . . . . .

ECF No. 7-6.

On appeal, the Supreme Court of Nevada affirmed, on the following basis:

> . . . . Double Jeopardy protections . . . are not implicated here because the purpose of the parole revocation hearing at issue in this case is to determine whether the Parole Board will reinstate appellant's original sentence for the underlying crime due to his apparent parole violations, not to punish appellant for the conduct that led to the parole revocation hearing.  *See United States v. Brown*, 59 F.3d 102, 104-05 (9th Cir. 1995) (recognizing that the revocation of parole is viewed as the reinstatement of a previous sentence, not as punishment for the actions resulting in the revocation).  This is true even if the parolee is subjected to more than one parole revocation based on the same underlying act, as appellant alleges is the case here.  *See United States v. Clark*, 984 F.2d 319, 320 (9th Cir. 1993) (holding that the revocation of both probation and supervised release related to two prior convictions based on a single action by the offending party was permissible and did not implicate double jeopardy).  Accordingly, we conclude that the district court did not abuse its discretion in denying appellant's petition for a writ of prohibition . . . .

ECF No. 7-8.

In the federal petition, Sells alleges that the Double Jeopardy Clause bars Nevada from conducting a parole revocation hearing.  He maintains that "[d]ue to the fact [that] Nevada authorities authorized the Washington State Department of Corrections to conduct petitioner's parole violation hearing and impose sanctions thereon, [they] forfeited there [sic] right to conduct a 'second' parole

1  violation hearing and impose additional sanctions." ECF No. 5, at 3.

2    It appears that, subsequent to the filing of the federal petition, Sells has been released by

3  Washington into the custody of Nevada authorities. He currently is incarcerated in Nevada, apparently

4  following upon the revocation of his parole, there having been no court order to the contrary.

5  *Standard of Review*

6    The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential"

7  standard for evaluating state-court rulings that is "difficult to meet" and "which demands that state-court

8  decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170 (2011). Under this

9  highly deferential standard of review, a federal court may not grant habeas relief merely because it

10  might conclude that the state court decision was incorrect. 563 U.S. at 202. Instead, under 28 U.S.C.

11  § 2254(d), the court may grant relief only if the state court decision: (1) was either contrary to or

12  involved an unreasonable application of clearly established law as determined by the United States

13  Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence

14  presented at the state court proceeding. 563 U.S. at 181-88.[3]

15    A state court decision is "contrary to" law clearly established by the Supreme Court only if it

16  applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision

17  confronts a set of facts that are materially indistinguishable from a Supreme Court decision and

18  nevertheless arrives at a different result. *E.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003). A state

19  court decision is not contrary to established federal law merely because it does not cite the Supreme

20  Court's opinions. *Id.* Indeed, the Supreme Court has held that a state court need not even be aware of

21  its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.*

22  Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its

23

24    [3]28 U.S.C. § 2254(d) requires that, if the foregoing standard is not met, "[a]n application for a writ of habeas

25  corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits." Petitioner is and has been in custody pursuant to the judgment of a state

26  court, both while on parole and now while in physical custody. The AEDPA standard of review accordingly applies even though he does not challenge the underlying judgment of conviction. *Accord Himes v. Thompson*, 336 F.3d 848

27  (9th Cir. 2003)(applying AEDPA standard of review to challenge to decisions revoking parole and denying rerelease); *cf. Shelby v. Bartlett*, 391 F.3d 1061, 1064-65 (9th Cir. 2004)(AEDPA limitation period applied to claims by a person in

28  custody pursuant to a state court judgment regardless of the target of the claim).

-4-

1   own, when the precedent from [the Supreme] Court is, at best, ambiguous." 540 U.S. at 16.  For, at

2   bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is

3   not contrary to clearly established federal law.

4       A state court decision constitutes an "unreasonable application" of clearly established federal

5   law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts

6   of the case was not only incorrect but "objectively unreasonable." *E.g., Mitchell*, 540 U.S. at 18; *Davis*

7   *v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

8       To the extent that the state court's factual findings are challenged, the "unreasonable

9   determination of fact" clause of Section 2254(d)(2) controls on federal habeas review.  *E.g., Lambert*

10  *v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004).  This clause requires that the federal courts "must be

11  particularly deferential" to state court factual determinations.  *Id*.  The governing standard is not

12  satisfied by a showing merely that the state court finding was "clearly erroneous."  393 F.3d at 973.

13  Rather,  AEDPA requires substantially more deference:

14          . . . .  [I]n  concluding  that a state-court finding is unsupported by
            substantial evidence in the state-court record, it is not enough that we
15          would reverse in similar circumstances if this were an appeal from a
            district court decision. Rather, we must be convinced that an appellate
16          panel, applying the normal standards of appellate review, could not
            reasonably conclude that the finding is supported by the record.
17

18  *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

19      Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless

20  rebutted by clear and convincing evidence.

21      The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled

22  to habeas relief.  *Pinholster*, 563 U.S. at 569.

23                              ***Discussion***

24      At the outset, petitioner's moving factual premise is undercut by the administrative materials

25  that he presents.

26      Sells maintains that Nevada authorities authorized Washington authorities to conduct his "parole

27  violation hearing" and thereby forfeited their right to conduct a second "parole violation hearing."  The

28  administrative materials that he attaches with his pleadings instead clearly reflect that: (a) Nevada

1   authorities indicated from the outset on July 29, 2010, that the matter was being presented to the Nevada

2   Parole Board for consideration of parole revocation proceedings and Nevada authorities made no

3   request to Washington authorities that they determine whether his Nevada parole should be revoked;

4   (b) the hearing officer at the August 10, 2010, Washington hearing clearly had no issue before him, and

5   made no determination, regarding petitioner's Nevada parole, instead recommending that he be returned

6   to Nevada for a parole revocation hearing; and (c) Nevada authorities issued a retake warrant only a

7   short time later on September 30, 2010.  In short, a parole *revocation* hearing – a hearing to determine

8   whether petitioner's Nevada parole should be revoked – never was held in Washington.  Nor did

9   Nevada authorities ever cede, forfeit, or relinquish their authority to conduct a parole revocation hearing

10  over to Washington authorities.

11       In any event, regardless of the character of the August 10, 2010, Washington proceedings,

12  petitioner cannot carry his burden under the deferential AEDPA standard of review.

13       In *Clark v. United States*, 984 F.2d 319 (9th Cir. 1993), the Ninth Circuit held that the Double

14  Jeopardy Clause did not bar the revocation of probation in one case and of supervised release in another

15  with imposition of consecutive sentences based upon the same violation.  The appeals court stated:

16           Clark misunderstands the distinction between prosecution for an
           offense and revocation of probation or release in a previously-imposed
17           sentence.  In his district court cases, Clark had been previously convicted
           and sentenced for two separate offenses: theft and aiding and abetting in
18           No. 90–439–K, and escape in No. 91–659–R.  Accordingly, when he
           violated the terms of his supervised release and probation, respectively,
19           he subjected himself to deferred punishment for those two crimes.  He
           was not directly prosecuted for the violation at all.  Although the
20           violating act underlying revocation was the same in both cases, the
           punishment was for the conduct underlying the original convictions. This
21           does not implicate double jeopardy.  *Cf. [United States v.] Redd*, 759
           F.2d [699,] . . . 701 [(9th Cir. 1985)]; *Bible [v. Arizona]*, 449 F.2d [111,]
22           . . . 112 [(9th Cir. 1971)].

23  984 F.2d at 321.

24       Petitioner urges that the Supreme Court of Nevada misapplied *Clark* because in *Clark* the same

25  violation resulted in revocations as to two separate convictions.  In contrast, he maintains that he has

26  been serving and/or been on parole on only one (relevant) sentence on only one Nevada conviction as

27  to which he has had a "violation hearing" twice in violation of double jeopardy.

28       Petitioner misapprehends his burden under AEDPA.

Petitioner must show that the state court decision was contrary to or an objectively unreasonable application of clearly established federal law *as determined by the United States Supreme Court*. Attempting to show instead that a state court allegedly misapplied federal circuit precedent does not satisfy that burden. Petitioner cites no Supreme Court precedent holding that the Double Jeopardy Clause even has any application to parole revocation proceedings in the first instance, much less that it bars two "violation hearings" held by agencies of two different states in the manner suggested by petitioner. Nor has the Court found any such Supreme Court precedent on independent review.[4] Absent such precedent, petitioner's claim fails.

The petition for a writ of habeas corpus therefore will be denied on the merits.[5]

---

[4]*Cf. Johnson v. United States*, 529 U.S. 694, 700-01 (2000)(the Court attributed post-revocation penalties to the original conviction rather than to punishment for the violation of the conditions of supervised release in light of, *inter alia*, the double jeopardy issues that instead would arise if the post-revocation penalties were construed as punishment for the violation); *United States v. DiFrancesco*, 449 U.S. 117, 137 (1980)("there is no double jeopardy protection against revocation of probation and the imposition of imprisonment"); *see also Moor v. Palmer*, 603 F.3d 658, 660 (9th Cir. 2010)(parole revocation simply is a continuation of the punishment for the original crime and is not a criminal penalty for violation of the terms of parole; parole revocation therefore is not a type of criminal punishment that would trigger the protections of the Double Jeopardy Clause).

The only procedural vehicle by which petitioner could have sought to have such law established by a federal court in the first instance for his case would have been via a timely petition to the United States Supreme Court for a writ of *certiorari* from the May 14, 2014, decision of the Supreme Court of Nevada.

[5]The Court is not persuaded that it should resolve the case on different grounds.

Respondents contended in their answer, which was filed while petitioner still was incarcerated in Washington, that his double jeopardy claim was not ripe because petitioner's parole had not yet been revoked. The Court is not sanguine that a double jeopardy claim seeking to forestall an allegedly successive proceeding is not ripe until after the conclusion of the successive proceeding. The Double Jeopardy Clause, after all, protects against successive proceedings where it is applicable. Under respondents' argument, a defendant would not be able to stop a second trial for the same offense under the Double Jeopardy Clause but instead would have to wait until the conclusion of the second trial and appeal. In any event, respondents' ripeness concern, to the extent that it presented a viable issue, would appear to have been resolved by the apparent subsequent revocation of petitioner's parole and his reincarceration in Nevada.

The flip side of ripeness is accrual and timeliness. On or about March 30, 2012, the Nevada Division of Parole and Probation transmitted papers to Sells seeking his waiver of extradition and waiver of personal revocation hearing preparatory to holding a parole revocation hearing. See ECF No. 8, at 5-6. Petitioner filed his August 13, 2012, state petition within five months of this date. He further constructively filed his July 7, 2014, original federal petition within a month of the June 9, 2014, issuance of the remittitur following the state supreme court's affirmance of the denial of state judicial relief. While these dates would suggest that the federal petition potentially was timely, a question potentially would arise as to whether petitioner's claim accrued as far back as petitioner's notice of the September 30, 2010, retake warrant. Respondents have not raised any issue as to timeliness, however. The Court is neither obligated nor inclined to

(continued...)

IT THEREFORE IS ORDERED that the petition is DENIED on the merits and that this action shall be DISMISSED with prejudice.[6]

IT FURTHER IS ORDERED that a certificate of appealability is DENIED.  For the reasons assigned herein, reasonable jurists would not find the district court's rejection of the sole ground presented herein to be debatable or wrong.

---

[5](...continued)

raise the issue *sua sponte* at this late juncture, particularly given the factual inquiry required to determine when Sells reasonably knew what with regard to Nevada's intentions.  *See Wood v. Milyard*, 132 S.Ct. 1826, 1830 & 1832-35 (2012)(a federal court is not obligated to consider a forfeited timeliness defense *sua sponte* and potentially may abuse its discretion by doing so); *cf. Shelby v. Bartlett*, 391 F.3d 1061, 1065-66 (9th Cir. 2004)(accrual of habeas corpus claims pertaining to administrative action turns upon when the petitioner has notice).  The scheduling order in this action required that respondents "raise all potential affirmative defenses in the initial responsive pleading."  ECF No. 4, at 1-2.  Their boilerplate in the answer that "[r]espondents assert all relevant defense [sic] including defenses this Court can raise sua sponte" preserved nothing.  See ECF No. 7, at 3.

Respondents suggested in the answer that the petition should be dismissed – at a time when petitioner was in physical custody in Washington – because "there is no named respondent who has custody over SELLS' person that can produce him."  ECF No. 7, at 9.  As a Nevada parolee, petitioner undeniably was in custody for purposes of the habeas jurisdiction of a Nevada federal court with regard to the subject matter of this habeas claim, especially following the September 30, 2010, retake warrant.  *See, e.g., Rose v. Morris*, 619 F.3d 42 (9th Cir. 1980).  Petitioner further properly named the Nevada Board of Parole and Nevada Attorney General as respondents on such a claim.  *See, e.g., Jones v. Cunningham*, 371 U.S. 236, 243-44 (1963); 1976 Advisory Committee Notes to Rule 2(b) of the Rules Governing Section 2254 Cases (parole officials are proper respondents if petitioner is a parolee, and the state attorney general is the proper catchall respondent in all other anomalous situations that differ from those covered in the advisory committee note).  Now that petitioner is back in Nevada physical custody, it perhaps would be appropriate for petitioner to add his immediate physical custodian, the Warden at High Desert State Prison, as an additional respondent.  However, the action was properly commenced against proper respondents; and the current absence of the immediate custodian as an additional respondent does not go to the Court's jurisdiction over the subject matter, particularly given the nature of that subject matter.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 451-52 (2004)(Kennedy, J., concurring); *see also Armentero v. INS*, 340 F.3d 1058 (9th Cir. 2003), *opinion withdrawn on grant of en banc rehearing*, 382 F.3d 1153 (9th Cir. 2004), *appeal dismissed per fugitive disentitlement doctrine*, 412 F.3d 1088 (9th Cir. 2005)(the Ninth Circuit extensively discussed a "flexible, practical approach to designating appropriate respondents").  Petitioner may, however, file a motion in this court to add the Warden as an additional respondent if he wishes to do while seeking appellate or other review.  *Cf.* 1976 Advisory Committee Notes, *supra* ("In any of the above situations the judge may require or allow the petitioner to join an additional or different party as a respondent if to do so would serve the ends of justice.")  There nonetheless is no impediment to proceeding to final judgment with the original and properly named respondents.

Respondents' further provided argument regarding whether petitioner was provided sufficient procedural due process.  Petitioner raised only a single claim under the Double Jeopardy Clause.  The Court has no other claim before it.

The overriding point in all events is that petitioner cannot carry his burden under AEDPA on his double jeopardy claim.

[6]The docketing clerk is requested and directed to review the final disposition paragraph of this order pertaining to petitioner's identification number prior to commencing docketing and service of the order and judgment.

-8-

IT FURTHER IS ORDERED that petitioner may file a motion in this court to add his immediate physical custodian as a respondent in conjunction with any request for appellate or other review.

IT FURTHER IS ORDERED that, prior to docketing and service of this order and the accompanying judgment, the Clerk of Court shall correct petitioner's identification – or "back" – number on the docket sheet to 42483 rather than 42485, so that the notice of electronic filing issued during docketing will reflect mail service on petitioner with the correct identification number in petitioner's address.

The Clerk shall enter final judgment accordingly in favor of respondents and against petitioner, dismissing this action with prejudice.

DATED this 14th day of July, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE